R. J. Armstrong & Co., Inc. v. Commissioner.
R. J. Armstrong & Co. v. Commissioner
Docket No. 34480.
United States Tax Court
1953 Tax Ct. Memo LEXIS 381; 12 T.C.M. (CCH) 94; T.C.M. (RIA) 53038; February 9, 1953
*381 Held, reasonable salaries for petitioner's officers determined. Selling expenses incurred by the petitioner in the taxable years allowed. George R. Sheriff, Esq., 42 Broadway, New York, N. Y., and Joseph C. Woodle, Esq., for the petitioner. Charles M. Greenspan, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies against the petitioner corporation as follows: Year
Tax
Deficiency
1943
Declared Value Excess Profits
$ 1,659.37
Excess Profits
10,017.34
1944
Declared Value Excess Profits
2,390.27
Excess Profits
14,167.08
The issues presented are whether the petitioner is entitled to deduct certain amounts as reasonable compensation for services rendered and certain amounts as selling expenses. Findings of Fact R. J. Armstrong & Co., Inc., the petitioner, is a New York corporation engaged in the manufacture of passementerie trimmings and other embellishments for women's garments. It filed its income and excess profits tax returns for the calendar years 1943 and 1944 with the collector of internal revenue for the third district of New York. During the taxable *382 years all of the petitioner's stock was owned in equal shares by Placido Comunale, hereinafter sometimes referred to as Placido; his brother, Joseph Comunale, hereinafter sometimes referred to as Joseph; and Henry Solomon, hereinafter sometimes referred to as Henry. In 1943 and 1944, Placido Comunale was president of the petitioner corporation, Joseph Comunale held the office of secretary and Henry Solomon was treasurer. These officers, all of whom had been engaged in this line of business for a number of years, devoted all their working time to the petitioner. They received equal salaries each year from 1936 through 1944. On November 23, 1943, the petitioner made application to the Salary Stabilization Unit, a part of the Treasury Department, requesting approval to pay salaries for 1943 in the amount of.1698 of total sales for the year. This figure represented the average percentage of gross sales received by the three officers as compensation from the years 1936 to 1942, inclusive. The application stated that it had been the custom for the petitioner's officers to withdraw all profits as salaries annually. On December 18, 1943, approval was granted to pay the officers on the basis *383 of.1698 of 1943 sales, or $13,000, whichever was lower. A salary of $13,000 was authorized and paid to each officer in 1943. The respondent disallowed officers' salaries for 1943 to the extent of $3,500 each. In June 1944, the petitioner applied to the Salary Stabilization Unit for permission to pay.1698 of 1944 sales. Approval was granted to pay petitioner's officers salaries of $15,000 each and the salaries were authorized and paid. The respondent disallowed officers' salaries for 1944 to the extent of $5,000 each. The petitioner's gross sales, salaries paid to the three officers and net income for the years 1936 through 1944 were as follows: Salaries Paid to
Year
Gross Sales
Petitioner's
Net Income
3 Officers
1936
$191,770.21
$35,245.43
$ 1,883.57
1937
192,762.07
39,084.40
2,348.51
1938
103,307.43
13,755.00
( 317.73)
1939
81,823.46
13,260.00
(2,609.96)
1940
119,716.04
17,750.00
( 142.19)
1941
128,550.92
21,660.00
2,187.28
1942
177,901.53
34,335.00
4,711.74
1943
282,307.07
39,000.00
15,083.74
1944
296,781.87
45,000.00
22,216.95 No dividends were paid in these same years. During the years in question, the *384 petitioner's officers worked an average of 60 hours a week. In 1943, the petitioner employed on its premises 29 persons receiving total wages of $21,930.41. The taxpayer also employed 26 home workers in 1943 who received total compensation on a piecework basis of $48,821.60. Three salespersons were also employed in the same year at total salaries of $6,471. A designer was paid $3,464 and a bookkeeper received $1,087.03. In 1944, inside workers were paid $23,265.90 and home workers received $56,155.88. Two saleswomen were paid $5,784, the designer $3,727 and the bookkeper $1,590. Placido Comunale and Henry Solomon were principally engaged in selling and contacting customers. Joseph Comunale supervised the production end of the business. Placido and Henry took samples of designs with them in calling on customers. They demonstrated the samples with suggestions as to their use. Placido and Henry assisted the petitioner's designer in the creation of these products and aided the salaried salesmen in closing sales. Competition in the industry required Placido and Henry to visit their customers frequently and to maintain personal contact with them. Considerable effort and perseverance were *385 demanded of salesmen in the trade. Placido also supervised administrative functions of the business, including negotiations relating to labor disputes. Placido and Henry assisted Joseph in production matters and all of the officers were familiar with all operations of the business. Joseph supervised the manufacture of the petitioner's products, employment, office personnel, maintenance records and the allocation of work. He also took charge of homework operations, employed the personnel for such work and instructed them in the various tasks required of them. He visited their homes personally and picked up the completed product before and after office hours. Joseph also supervised petitioner's inventory and the materials used in the manufacture of its products. An inventory of fabrics, buttons, braids, cotton belts and tassels of an approximate value of $10,000 was maintained during the taxable years. Joseph was also in charge of the shipping department and the packaging and delivery of orders. He also estimated costs and determined selling prices. In 1942 and 1943, the petitioner lost several salesmen due to the war and Placido and Henry undertook the increased sales burden. Other *386 employees left the petitioner during the war years and Joseph undertook their jobs. The loss of employees required greater efforts from all the officers and they were forced to assist each other to a greater degree. Since 1943, the petitioner has been a member of The Pleaters, Stitchers & Embroiderers Association, Inc., a trade association. It operates a credit department, a collection service, and assists its members in labor disputes and in complying with government requirements. Of the 50 competing firms which are members of the association, only four are of comparable size in so far as gross profits are concerned. The salaries paid to the petitioner's officers were lower than the average in other comparable firms in 1943 and about average in 1944. A petty cash fund was maintained for the petitioner's employees by Placido Comunale. He put at least $20 in change in his desk each week for this purpose. Employees reimbursed themselves out of this fund for amounts expended for car fare, outside telephone calls, tips, entertainment expenses, Christmas presents and other similar expenses incurred in business dealings with customers. When the money ran short Placido made another deposit *387 in the fund and drew a check at the end of each week for the amount spent by the employees. The employees did not fill out memoranda relating to the amounts withdrawn by them. The amounts of the checks drawn weekly by Placido to reimburse himself for the sums deposited in the fund were recorded in the petitioner's books as "selling, traveling and petty cash expenses." These records reflect withdrawals from the fund of $5,252.16 in 1943 and $6,108.13 in 1944. The petitioner claimed deductions in these amounts on its tax returns for the years in question. The respondent disallowed the deductions for selling expenses for the year 1943 to the extent of $2,252.16 and for 1944 to the extent of $3,108.13 as not being substantiated. The amounts paid by the petitioner to its officers in 1943 and 1944 were reasonable compensation for services actually rendered. The selling expenses incurred by the petitioner were properly deductible by it in the amounts claimed. Opinion VAN FOSSAN, Judge: The conclusions of fact stated in the last paragraph above are dispositive of the only issues presented by this case. The record fully supports such findings and proves that respondent erred in disallowing *388 the deductions claimed. The salaries paid were reasonable and the expenses were incurred in the ordinary and necessary conduct of petitioner's business. The record being clear as to both items, and no issue of law being presented, no further discussion is deemed necessary. Decision will be entered under Rule 50.